DEVIN JEFFERSON,

        Petitioner,

        Case No. 22-cv-1407-pp

v.

UNITED STATES OF AMERICA,

        Respondent.

**ORDER SCREENING MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE UNDER 28 U.S.C. §2255 (DKT NO.1), DENYING MOTION, DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

On November 28, 2022, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255, challenging his conviction in <u>United States v. Jefferson</u>, Case No. 17-cr-222 (E.D. Wis.). Dkt. No. 1. Because the court concludes that the motion and the files and records of the case conclusively show that the petitioner is not entitled to relief, the court must dismiss the petition and the case.

**I.    Background**

    A.    <u>Underlying Case</u>

        1.    *Superseding indictment*

On March 20, 2018, a grand jury returned a superseding indictment charging the petitioner, Tracy Hollowell, Julius Finch and Darryl Harvey with committing armed robberies of Walgreens stores in violation of 18 U.S.C. §1951(a)—"Hobbs Act" robbery. <u>Jefferson</u>, Case No. 17-cr-222, Dkt. No. 13. Count One charged all four defendants with conspiring to commit a series of

robberies of Walgreens stores between March 8 and March 10, 2017. Id. at 1-2. Count Two charged the petitioner, Hollowell and Finch with the March 8, 2017 robbery of a Walgreens on South 28th Street in Milwaukee. Id. at 3. Count Three charged all four defendants with committing the March 10, 2017 Hobbs Act robbery of a Walgreens store on South Howell in Milwaukee. Id. at 4. Count Four charged all four defendants with the March 10, 2017 Hobbs Act robbery of a second Walgreens store on Appleton Avenue in Menomonee Falls. Id. at 5.

        2.    *Plea agreement*

On October 23, 2018, the petitioner signed a plea agreement. Id. at Dkt. No. 42, page 14. The plea agreement stated that the petitioner was pleading guilty to Counts Two, Three and Four of the superseding indictment. Id. at ¶4. The petitioner acknowledged that he had read and fully understood "the nature and elements of the crimes with which he ha[d] been charged" and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶3. The petitioner acknowledged, understood and agreed that he was guilty of the offenses in Counts Two, Three and Four of the superseding indictment. Id. at ¶5. He admitted that the government could prove beyond a reasonable doubt facts attached to the plea agreement, and that those facts were true and correct and established his guilt beyond a reasonable doubt. Id. He stated that he understood and agreed that the maximum punishments for Counts Two, Three and Four were twenty years in prison, a $250,000 fine, three years of supervised release and an unspecified amount of restitution. Id. at ¶6. The petitioner acknowledged, understood and agreed that he had "discussed the relevant statute as well as the applicable sentencing guidelines with his attorney." Id. at ¶7.

The plea agreement also laid out the elements of the charges. Id. at ¶9. It said that the parties understood and agreed that in order to sustain the Hobbs Act robbery charges in Counts Two, Three and Four, the government would have had to prove beyond a reasonable doubt that (1) "[the petitioner] or his accomplice knowingly obtained or attempted to obtain money or property from or in the presence of a person," (2) "[the petitioner] or his accomplice did so by means of robbery," (3) "[the petitioner] or his accomplice believed that the person parted with the money or property because of the robbery," and (4) "the robbery affected interstate commerce." Id.

The petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with him to [the petitioner's] satisfaction." Id. at ¶12. He acknowledged and understood "that the sentencing guidelines recommendations contained in this agreement [did] not create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guidelines range. Id. at ¶14. The parties acknowledged, understood and agreed that the sentencing court could "consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct [was] not the subject of the offenses to which [the petitioner] [was] pleading guilty." Id. at ¶15. "The parties agree[d] to recommend to the sentencing court that the applicable base offense level for the offense charged in Counts Two, Three and Four [was] 20 under the Sentencing Guidelines Manual §2B3.1(a). Id. at ¶16. They agreed that the government would recommend that "a one-level increase under Sentencing Guidelines Manual § 2B3.1(b)(6) [was] applicable to the offense level for the offenses charged in Counts Two, Three, and Four because controlled substances were taken in each of those armed robberies." Id. at ¶17.

3

The parties acknowledged and understood that "the government would recommend to the sentencing court that a 6-level increase under the Sentencing Guidelines Manual § 2B3.1(b)(2)(B) [was] applicable to the offense level for the offenses charged in Counts Two and Four because the offenses involved the pointing of a firearm directly at a victim and a 5-level increase under § 2B3.1(b)(2)(B) [was] applicable to the offense level for the offense charged in Count Three because a firearm was possessed." Id. at ¶18. The parties acknowledged and understood that "the government would recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 2B3.1(b)(4)(B) [was] applicable to the offense level for the offenses charged in Counts Two and Four because the [petitioner] physically restrained victims to facilitate the commission of the offenses as the armed robbers moved the victims at gunpoint to the safe." Id. at ¶19. The government agreed to recommend a two-level decrease under §3E1.1(a) for the petitioner's acceptance of responsibility, "but only if [the petitioner] exhibit[ed] conduct consistent with the acceptance of responsibility," including but not limited to the petitioner's "voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing." Id. at ¶21. The parties agreed that if the court determined at the time of sentencing that the petitioner was entitled to that two-level reduction, the government would make a motion under U.S.S.G. §3E1.1(b) for an additional one-level decrease because of the petitioner's timely agreement to plead guilty. Id. The government agreed to recommend a sentence within the applicable sentencing range, as determined by the court. Id. at ¶24.

The agreement provided that if the petitioner "violate[d] any term of [the] agreement at any time, engage[d] in any further criminal activity prior to

4

sentencing, or fail[ed] to appear for sentencing, [the] agreement [would] become null and void at the discretion of the government." Id. at ¶41. If the agreement "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. Finally, the petitioner acknowledged, understood and agreed that he was "plead[ing] guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶42.

      3.    *Change-of-plea hearing*

On December 13, 2018, the court held a change-of-plea hearing. Id. at Dkt. No. 45. The court's minutes reflect that the court placed the petitioner under oath, reviewed the plea agreement with him and questioned him. Id. at 1. The court recounted that Counts Two, Three and Four involved maximum prison terms of twenty years, maximum fines of $250,000 and a maximum of three years of supervised release, and mentioned that each charge carried a mandatory special assessment of $100 for a total of $300. Id. "[T]he court found that the [petitioner] understood his trial rights, the penalties associated with the charge, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. The court also found that the petitioner entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty and found [the petitioner] guilty of the offense charged in the indictment." Id.

5

4.  *Sentencing hearing*

On April 25, 2019, the court conducted the sentencing hearing. Id. at Dkt. No. 71. The court explained that the sentencing guidelines in the presentence report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in 18 U.S.C. §3553. Id. at 1.

For Count Two, the court calculated a base offense level of 20 under U.S.S.G. §2B3.1(a), "[a] 6-level enhancement under §2B3.1(b)(3)(B) for otherwise using a firearm," "[a] 2-level enhancement under §2B3.1(b)(4)(B) for physical restraint of a victim" and "[a] 1-level enhancement under §2B3.1(b)(6), because controlled substances were taken during the robbery," for an adjusted offense level of 29. Id. For Count Three, the court calculated a base offense level of 20 under U.S.S.G. §2B3.1(a), "[a] 5-level enhancement under §2B3.1(b)(3)(B) for possession of a firearm during the robbery" and "[a] 1-level enhancement under §2B3.1(b)(6), because controlled substances were taken during the robbery," for an adjusted offense level of 26. Id. at 2. For Count Four, the court calculated a base offense level of 20 under U.S.S.G. §2B3.1(a), "[a] 6-level enhancement under §2B3.1(b)(3)(B) for otherwise using a firearm," "[a] 2-level enhancement under §2B3.1(b)(4)(B) for physical restraint of a victim" and "[a] 1-level enhancement under §2B3.1(b)(6), because controlled substances were taken during the robbery," for an adjusted offense level of 29. Id. The court determined that the greater of the adjusted offense levels was 29 and added 3 levels under §3D1.4 due to the multiple counts of conviction, for a combined adjusted offense level of 32. Id. The plea agreement and the presentence report recommended a 2-level reduction for acceptance of responsibility and the government moved in court for another 1-level reduction

6

for the timeliness of the petitioner's acceptance of responsibility. Id. The court granted the motion and neither party objected to the adjusted offense level of 29. Id.

The presentence report reflected a subtotal of 3 criminal history points, and because the petitioner had committed the offenses of conviction while he was on state probation, the court added an additional 2 points under §4A1.1(d), for a total of 5 criminal history points and a criminal history category of III. Id. An adjusted offense level of 29 in criminal history category III resulted in an advisory sentencing range of 108 to 135 months. Id. Neither party objected to these calculations. Id.

The court sentenced the petitioner to 130 months' imprisonment on each of the three Hobbs Act robberies (to run concurrently with each other) for a total sentence of 130 months' imprisonment, followed by three years of supervised release. Id. at 3. The court imposed the 130-month sentence to run consecutively to the sentence imposed in Oldham County (Texas) Circuit Court Case No. OCR-131-061. Id. The court ordered the petitioner to pay a special assessment of $300 and $49,883.24 in restitution. Id. The court agreed to the petitioner's request to recommend that the Bureau of Prisons place the petitioner in a facility that provided the Residential Drug and Alcohol Program and in a facility as close as possible to Indianapolis, Indiana. Id.

The court entered judgment on May 9, 2019. Id. at Dkt. No. 73. The court's judgment reflected the sentence: 130 months on Count Two, 130 months on Count Three to run concurrently with the sentence imposed on Count Two and 130 months on Count Four to run concurrently with the sentences imposed on Counts Two and Three and consecutively to the sentence

imposed in Oldham County Circuit Court (Texas) Case No. OCR-131-061, for a total term of 130 months' imprisonment. Id. at 2.

        5.    *Post-conviction*

On May 9, 2019—the same day the court entered judgment—the petitioner's criminal defense counsel filed a letter advising the court that he'd met with the petitioner and discussed his appellate rights with him. Id. at Dkt. No. 72. Counsel advised the court that the petitioner had stated he did not wish to appeal. Id.

On October 28, 2022, the clerk's office received from the petitioner a motion captioned "Motion for § 2255." Id. at Dkt. No. 141. The petitioner appeared to believe that he had filed the motion with the Seventh Circuit Court of Appeals; the caption referenced the "district court for the Seventh Circuit" and sought leave to file a §2255 petition "for the District Court's determination." Id. Although the motion did nothing more than seek leave to file a §2255 petition, the clerk's office erroneously docketed it as the petition itself and opened a new case, Jefferson v. United States, Case No. 22-cv-1282. On December 28, 2022, the court denied the motion as moot (because by then the petitioner had filed the instant petition) and dismissed the case as erroneously filed. Id. at Dkt. No. 2.

    B.    <u>Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255</u> (Dkt. No. 1)

On October 28, 2022, the petitioner filed this motion to vacate his sentence under 28 U.S.C. §2255. Case No. 22-cv-1828, Jefferson v. United States (E.D. Wis.), Dkt. No. 1. The petition states one ground for relief:

> Hobbs Act is no longer a violent crime for the 6 point enhancement, which should be taken off my sentence due to recent unconstitutional violations and the fact that the Seventh Circuit

8

Court of Appeals held to support this ground. Also, (see, Attached Memorandum of Law. Ex. B)

Id. at 4.

Attached to the petition are two documents. The first is a brief order from the Seventh Circuit Court of Appeals dated October 13, 2022. Dkt. No. 1-1 at 1. The order indicates that the petitioner applied to the Seventh Circuit for leave to file a second or successive collateral attack on his sentence, but that "as far as he has shown, and as best we can tell after reviewing available electronic records, he has not filed a prior collateral attack." Id. The appellate court dismissed the application without prejudice, concluding that the petitioner did not need that court's authorization to file a §2255 petition. Id.

The second document is titled "Memorandum of Law to Motion for § 2255." Id. at 2. The relevant portions of the memorandum state:

> Pursuant to "New Case Law" recently held by this Circuit that a "Hobbs Act Robbery" is no longer a crime of violence. See United States v. Chappelle, No. 20.3835 (7th Cir. 2022).
>
> Petitioner pled guilty on **10/23/2018**, to **#3** count(s) for Hobbs Act Robbery in the United States District Court of Wisconsin. Probation sought an enhanced sentenced for § 2b3.1(b)(2)(B), because at the time Hobbs Act Robbery was considered a crime of violence.
>
> Without Hobbs Act Robbery being a crime of violence, the six(6) point enhancement no longer would qualify, which would reduce Petitioners sentence substantially. Can I please have an application for § 2255?

Id.[1]

---

[1] Although the memorandum of law ended by asking permission to file a §2255 petition, the court construes the pleading to which it is attached as an actual §2255 petition and not a request for a §2255 form. It appears that the petitioner copied the request for a §2255 form that he had filed in October 2022 and added the "memorandum of law" title to it for the purposes of this petition.

## II. Analysis

A district court must review—or "screen"—a §2255 motion. Rule 4 of the Rules Governing Section 2255 proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b), Rules Governing §2255 Proceedings. A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers only whether the petitioner has raised claims that can be adjudicated in a section §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period. The court also considers factors such as whether the petition was timely filed and whether the petitioner has procedurally defaulted on any of his claims.

### A. Timeliness

Section 2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The court entered judgement in the underlying criminal case on May 9, 2019. Jefferson, Case No. 17-cr-222, Dkt. No. 73. The petitioner filed his §2255 motion on October 28, 2022. Jefferson, Case No. 22-cv-1407, Dkt. No. 1. The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). He has not identified any newly discovered evidence under §2255(f)(4), or argued under §2255(f)(2) that an impediment prevented him from filing his motion.

That leaves §2255(f)(3), which "allows a fresh year from 'the date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.'" Stanley v. United States, 827 F.3d 562, 564 (7th Cir. 2016 (quoting §2255(f)(3)). So, if the United States Supreme Court initially recognized the right the petitioner asserts and made that right retroactively applicable to cases on collateral review, the petitioner would have one year from the date the Supreme Court recognized the right and made it retroactive to file his §2255 petition.

But the right the petitioner asserts—that a Hobbs Act robbery is not categorically a "crime of violence" and thus that his sentence should not have been enhanced under U.S.S.G. §2B3.1(b)(2)(B)—has not been recognized (newly or otherwise) by the United States Supreme Court, nor has that Court applied

11

such a right retroactively to cases on collateral review. The petitioner cites to what he says is the Seventh Circuit Court of Appeals' decision in <u>United States v. Chappelle</u>. Dkt. No. 1. at. 1. A decision of an appellate court—even if that decision recognizes a new right—does not "allow a fresh year" from the date of that decision for filing a §2255 petition. The petitioner did not timely file his motion because §2255(f)(3) does not apply, and the court must deny the petition and dismiss the case.

      B.    <u>Whether the claim is cognizable</u>

Even if the petitioner had timely filed the motion, the court would dismiss it because it is based on a misunderstanding of the applicable law. The petitioner argues that because a Hobbs Act robbery is no longer considered a "crime of violence," the court's application of the 6-level enhancement under U.S.S.G. §2B3.1(b)(2)(B) now is invalid. Dkt. No. 1 at 1. Again, in support of this proposition, he again cites to what he says is the Seventh Circuit Court of Appeals' decision in <u>United States v. Chappelle</u>, with what he says is an appellate case number of 20-3835. Dkt. No. 1-1 at 2. There is no Seventh Circuit case called <u>United States v. Chapelle</u>, and there is no Seventh Circuit case with docket number 20-3835. It appears that the petitioner meant to refer to a recent *Second* Circuit case, <u>United States v. Chappelle</u>, 41 F.4th 102 (2d Cir. 2022); the docket number for this case is 20-3835. In <u>Chappelle</u>, the Second Circuit held that under the career offender provision of the United States Sentencing Guidelines (U.S.S.G. §4B1.1(2)(a), which categorizes a defendant as a career offender if he has two prior felony convictions for a crime of violence or a controlled substances offense), a Hobbs Act robbery is not categorically a "crime of violence." <u>Id.</u> at 104. Decisions by the *Second* Circuit Court of Appeals are binding on federal district courts in Connecticut, New

12

York and Vermont. The petitioner was not sentenced by a district court in any of those states, and he did not file his §2255 petition in a district court in any of those states. The Eastern District of Wisconsin—where the petitioner was convicted and sentenced and where he filed his §2255 petition—is in the *Seventh* Circuit (which decides appeals from federal district courts in Illinois, Indiana and Wisconsin). This court is not bound by the holding in Chappelle.

A year before the Second Circuit issued its decision in Chappelle, the Seventh Circuit similarly held that for purposes of the career offender guideline, a Hobbs Act robbery does not categorically constitute a crime of violence. Bridges v. United States, 991 F.3d 793, 802 (7th Cir. 2021). But Bridges did not create the right the petitioner invokes.

The career offender guideline states that a defendant is a career offender if he was at least eighteen years old when he committed the federal crime of conviction, the federal crime of conviction was a felony that either was a crime of violence or a controlled substance offense and the defendant had at least two prior felony convictions for either a crime of violence or a controlled substance offense. U.S.S.G. §4B1.1(a). If a defendant qualifies as a career offender, his offense level and criminal history jump dramatically. A defendant convicted of a crime with a twenty-year maximum penalty who qualifies as a career offender will face a base offense level of 32 (compared to the petitioner's 29) and a criminal history category of VI (compared to the petitioner's III). U.S.S.G. §4B1.1(b). The definition of a "crime of violence" for the purposes of the career offender guideline is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. §4B1.2(1). The Seventh Circuit explained in Bridges that a defendant could commit a Hobbs Act robbery by "threatening physical force against any 'person

13

*or property,'"* while the career offender guideline defined a crime of violence only as a crime involving use or threats of violence against a *person*, not property. Bridges, 991 F.3d at 800. Accordingly, the Seventh Circuit held—as the Second Circuit later did in Chapelle—that a person convicted of Hobbs Act robbery has not been convicted of a crime of violence "as the Guidelines define the phrase," and therefore that "[t]he career offender guideline should not have been applied." Id. at 802.

The petitioner in *this* case was not sentenced as a career offender. Even if Hobbs Act robbery had constituted a crime of violence, the petitioner did not have two prior felony convictions for crimes of violence or controlled substances offenses. Because the court did not treat the petitioner as a career offender under U.S.S.G. §4B1.1(a), Bridges does not apply. The definition of a "crime of violence" under U.S.S.G. §4B1.2 is not relevant.

The court *did* enhance the petitioner's base offense level for Counts Two and Four. It did so, however, under U.S.S.G. §2B3.1(b)(2)(B), a subsection of the robbery guideline that states that "if a firearm was otherwise used" during the robbery, the court must increase the base offense level by 6 levels. (The guideline imposes a 7-level enhancement if a firearm was discharged during the robbery and a 5-level enhancement if the firearm was brandished during the robbery.) The court applied the 6-level enhancement to the base offense levels for Counts Two and Four based on the facts to which the petitioner admitted in the plea agreement. He admitted that during the March 8, 2017 robbery of the Walgreens on South 27th Street (the robbery charged in Count Two), he was one of the two gunmen who jumped the pharmacy counter and forced the pharmacist at gunpoint to give them drugs. Jefferson, 17-cr-222 at Dkt. No. 42, pages 15 and 18-20. He admitted that during the March 10, 2017

14

robbery at the Menomonee Falls Walgreens (the robbery charged in Count Four), he again was one of the armed gunmen who jumped the pharmacy counter and forced the pharmacist at gunpoint to provide them with drugs. Id. at pages 17, 18-20. The court did not enhance the petitioner's sentence because it considered him a career offender. It enhanced the petitioner's sentence because he otherwise used a firearm during the two robberies in question.

Because the petitioner's motion was not timely filed, because the case on which the petitioner relies is not binding on this court and because the Seventh Circuit case that *is* binding on this court does not stand for the proposition the petitioner asserts, the court must deny the motion and dismiss the case.

### III.    **Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the motion and the files and records of the case conclusively show that the petitioner is not entitled to relief.

15

Case 2:22-cv-01407-PP   Filed 12/29/22   Page 15 of 16   Document 2

## IV. Conclusion

The court **ORDERS** that the petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 1

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 29th day of December, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16

Case 2:22-cv-01407-PP   Filed 12/29/22   Page 16 of 16   Document 2